[Cite as *State v. Carpenter*, 2013-Ohio-1385.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

STATE OF OHIO,                              :

       Plaintiff-Appellee,            :

                                     :

  - vs -                                   :

                                       :

DEREK D. CARPENTER,                         :

       Defendant-Appellant.          :

CASE NO.  CA2012-06-041

O P I N I O N
4/8/2013

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2011 CR659

D. Vincent Faris, Clermont County Prosecuting Attorney, David Henry Hoffman, 123 North Third Street, Batavia, Ohio 45103, for plaintiff-appellee

Denise S. Barone, 385 North Street, Batavia, Ohio 45103, for defendant-appellant

**M. POWELL, J.**

{¶ 1}   Defendant-appellant, Derek Carpenter, appeals his conviction and sentence in the Clermont County Court of Common Pleas for aggravated robbery.

{¶ 2}   On November 6, 2009, at about 3:00 a.m., two unidentified individuals robbed the Thornton gas station on State Route 28 in Miami Township, Ohio.  Both individuals wore hooded sweatshirts, with the hoods pulled down near their eyes, and red bandanas across their face.  One was an African-American male, about six feet tall.  He was armed with a

firearm. The other was a "Mexican-looking," shorter male. Rita Hayes, the store clerk on duty at the time, was behind the counter. Also present in the store were Michael Young, a friend of Hayes visiting her, and Greg Mellett, a third-shift employee from a nearby towing company. Young, who is wheelchair-bound, was in front of the counter. Mellett was in the back of the store getting ice for his drink.

{¶ 3} According to Young, the two individuals "came storming into the store." While the shorter individual stood next to Young, the armed individual went behind the counter, put his right arm around Hayes' neck, held the gun to Hayes' head with his left hand, and demanded that she open the cash registers. When Hayes could not remember the code to open the cash registers, the armed individual hit her in the head a couple of times with the gun. He also struck her once in the side with the gun. Eventually, Hayes was able to open a cash register. The armed individual took money out of the cash register, dragged Hayes to a second cash register, which she was able to open, and took money out of it. The two individuals then fled the store. Unbeknownst to them, Mellett witnessed the robbery and called 9-1-1 while it was in progress. When the two individuals left the store, Mellett followed them outside. As they were fleeing, the individuals dropped some money. Mellett observed the tall, African-American male pick up the money and flee.

{¶ 4} The two individuals were eventually identified as appellant (the tall, African-American male) and Steven Rider (the "Mexican-looking," shorter male). In August 2011, appellant was indicted on one count of aggravated robbery, with a firearm specification. During appellant's jury trial, Rider testified on behalf of the state.[1] Hayes, Young, Mellett, and Detective Robert Bradford of the Miami Township Police Department also testified on behalf

---

1. In exchange for Rider's cooperation and testimony before a grand jury and at appellant's trial, the state agreed to amend his original charge of aggravated robbery (a first-degree felony), with a firearm specification, to a charge of robbery (a third-degree felony), with no firearm specification.

of the state. Appellant did not present witnesses or testify on his behalf.

{¶ 5} Rider testified that in November 2009, Darrell Mays, Jr. and his girlfriend Angela Hyden lived together in an apartment complex "right down the road" from the Thornton gas station. For a few months before November 6, 2009, Rider "hung out" with appellant four or five times a week, usually in Mays' apartment. Appellant and Mays were "like brothers." Rider testified that on the evening of November 5, 2009, he, appellant, Mays, Hyden, and a friend of Rider (Demetri) were in Mays' apartment "drinking, smoking weed, and partying."

{¶ 6} That evening, Rider saw appellant come out of Mays' bedroom, looking "flustrated." Shortly after, Mays walked by and told appellant "not to puss out." Eventually, appellant told Rider that he (appellant) and Mays were going to rob the Thornton gas station. Appellant and Mays subsequently talked about the robbery, with Mays telling appellant that "if he was going to do it he needed not to puss out. He needed to just go get it done." Appellant went into Mays' bedroom and retrieved Hyden's gun from the closet. Appellant, Rider, Demetri, and another individual then drove to the gas station. It was around midnight.

{¶ 7} Because there were too many customers at the gas station, the group abandoned the plan to rob the store and went back to Mays' apartment where they continued partying, smoking, and drinking. Appellant was "all pumped up" and eager to go back to the gas station. Around 3:00 a.m., appellant and Rider walked to the gas station and waited outside for about 30 minutes for customers to leave. Both were wearing red bandanas; appellant had the gun. Upon realizing that some of the customers were "just hanging out" at the store (Mellett's tow truck was parked outside the store), appellant and Rider decided to go ahead and rob the store.

{¶ 8} Rider next testified about the robbery. His account of the robbery matched for

the most part Hayes' and Young's testimony.[2]  Appellant and Rider then fled the store and went back to Mays' apartment.  As they were fleeing, appellant dropped some money.  As appellant picked up the money, Rider noticed that Mellett was looking at them.  Back at the apartment, the money was split between appellant, Rider, and Mays (for providing the gun). Rider received $147, the other two received a bigger share.

{¶ 9}  On April 6, 2011, the jury found appellant guilty of aggravated robbery.[3] Appellant was subsequently sentenced to eight years in prison.

{¶ 10}  Appellant appeals, raising four assignments of error.  His first and second assignments of error will be addressed together.

{¶ 11}  Assignment of Error No. 1:

{¶ 12}  THE TRIAL COURT ERRED AS A MATTER OF FACT AND LAW WHEN IT FAILED TO SUSTAIN THE APPELLANT'S OBJECTIONS TO THE INVESTIGATIVE DETECTIVE BEING PERMITTED TO OFFER HIS OPINION AS TO THE APPELLANT'S TRUTHFULNESS.

{¶ 13}  Assignment of Error No. 2:

{¶ 14}  THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN ALLOWING THE POLICE OFFICER TO TESTIFY TO HIS BODY LANGUAGE.

{¶ 15}  Appellant argues the trial court erred in allowing Detective Bradford to testify about appellant's body language and truthfulness during an interview with the detective.

{¶ 16}  During his investigation of the robbery, Detective Bradford interviewed appellant twice. The audiotapes of the interviews were played to the jury.  At trial, the detective testified

2. Young testified that the Mexican-looking, shorter male stood next to him and told him not to move or his life would be threatened.  Rider testified he stood next to Young and told him not to move but denied he threatened Young.

3. The jury found appellant guilty of aggravated robbery *without* the firearm specification.  The record shows, and the trial court so noted during the sentencing hearing, that the firearm specification was inadvertently omitted from the jury instructions and the verdict form.

about his training with regard to interviewing and interrogating techniques. The detective stated that "one of the biggest things on interviews isn't so much what people are saying, but the body language that is associated with what they're saying[.]" The detective explained that:

> [T]raining is teaching us how to read people and, you know, determine whether or not they're being open with us, or if we're closing off with somebody, or how to turn the interview. * * * And it's steering that interview based on their body language to make sure that we are, you know, getting truthful responses and that we are getting, you know, and that we are not pushing people the wrong way, or we're not shutting people down prematurely in an interview. And a lot of that is based on the body language as well as the responses they are giving has a lot to do with, you know, the answers they're giving and the credence you leave to those answers.

{¶ 17} The detective next testified about appellant's body language during his first interview. The detective stated that appellant "appeared to be very nervous, especially when I came to the point of making the accusation of the robbery," "was very standoffish" in his demeanor, and was "guarded." The detective further stated that appellant

> didn't want to answer the questions. Whenever he would answer the questions they were very self-serving answers. Some of the answers that were given at first were that he would go into Thornton's, and then that he wouldn't go into Thornton's. You know, that he'd only been in there a couple of times. * * * [Y]ou know, they were very self-serving, very limiting. That in conjunction with the body language of being kind of standoffish on answering a question, he's very guarded with that. You know, it led me to believe that * * * there was some deception there, and I was not getting the complete truth based upon my training and experience in interviewing people. I didn't feel like I was getting complete actual per - - effectual answers.

Defense counsel unsuccessfully objected to the detective's testimony regarding his training in body language and appellant's body language and truthfulness during the interview.

{¶ 18} Appellant argues Detective Bradford's testimony regarding appellant's body language and truthfulness was improperly admitted in violation of *State v. Boston*, 46 Ohio

- 5 -

St.3d 108 (1989).

{¶ 19} In *Boston*, the Ohio Supreme Court held that an expert witness may not testify as to his opinion of the veracity of a witness' statement, and that it was error for the trial court to admit an expert's testimony that the victim had been truthful. *Id.* at 128-129. The supreme court emphasized that "[i]n our system of justice it is the fact finder, not the so-called expert or lay witnesses, who bears the burden of assessing the credibility and veracity of witnesses." *Id.* at 129.

{¶ 20} Subsequently, the supreme court held that "[a] police officer's opinion that an accused is being untruthful is inadmissible." *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, ¶ 122. Likewise, Ohio appellate courts have applied the *Boston* rule to police officers, even when testifying as lay witnesses, because "jurors are likely to perceive police officers as expert witnesses, especially when such officers are giving opinions about the present case based upon their previous experiences with other cases." *State v. Miller*, 2d Dist. No. 18102, 2001 WL 62793, *5 (Jan. 26, 2001). *See also State v. Potter*, 8th Dist. No. 81037, 2003-Ohio-1338; *State v. Withrow*, 11th Dist. No. 2011-A-0067, 2012-Ohio-4887.

{¶ 21} "*Boston* violations are subject to harmless-error review under Crim.R. 52(A)." *State v. Richcreek*, 196 Ohio App.3d 505, 2011-Ohio-4686, ¶ 108 (6th Dist.). In determining whether the error was prejudicial or harmless, a reviewing court must read the entire record, disregarding the objectionable evidence, and then determine whether there was overwhelming evidence to support the guilty verdict. *See Withrow*; *State v. Davis*, 44 Ohio App.2d 335 (8th Dist.1975).

{¶ 22} We find that the trial court did not err in allowing Detective Bradford to testify that appellant "appeared to be very nervous," "was very standoffish" in his demeanor, and was "guarded" during his first interview. The detective observed appellant's behavior and his testimony was simply a comment about appellant's demeanor during the interview. The

detective did not testify that he believed appellant was or was not telling the truth. See *Davis*, 2008-Ohio-2 at ¶ 120; *State v. Burchett*, 12th Dist. Nos. CA2003-09-017 and CA2003-09-018, 2004-Ohio-4983, ¶ 20; *State v. Adrian*, 168 Ohio App.3d 300, 2006-Ohio-4143, ¶ 55 (2d Dist.); and *State v. Whitfield*, 2d Dist. No. 22432, 2009-Ohio-293, ¶ 28.

**{¶ 23}** By contrast, we find that the trial court erred in allowing the detective to testify that appellant's answers were "very self-serving, very limiting" and that "there was some deception there" because the detective "was not getting the complete truth" or "effectual answers." Clearly, such testimony expressed the detective's opinion that appellant was being untruthful and was erroneously admitted. *Davis* at ¶ 123.

**{¶ 24}** Nevertheless, such error does not warrant a reversal of the jury's verdict. A thorough review of the entire record, disregarding the detective's foregoing testimony, shows overwhelming evidence of appellant's guilt. First, the testimony of Rider, one of the two individuals who robbed the gas station, clearly identified appellant as the tall, armed, African-American male who robbed the gas station alongside Rider. As stated earlier, Rider's account of the robbery matched what Hayes and Young witnessed and experienced during the robbery. The armed individual held the gun with his left hand during the entire robbery. The parties stipulated at trial that a month after the robbery, appellant was seen signing a form with his left hand.

**{¶ 25}** Evidence at trial of appellant's height and weight the year before and the year after the robbery, and a still photo of the armed individual entering the store showed that the armed individual's height and weight were very similar to appellant's. During his interviews with Detective Bradford (which recordings were played to the jury), appellant provided inconsistent statements as to whether and how often he would go to the station, and as to whether he knew Rider and how often he would see him. Appellant admitted being in Mays' apartment on November 5, 2009 but denied knowing anything about the robbery and did not

recall anybody talking about a robbery. Later in the interview, appellant remembered being at a party and hearing several teenagers say "they were going to go rob somebody, or go sell some drugs, or something. They just got a little talk about how they was going to get some money."

{¶ 26} In light of the foregoing evidence, we find that allowing the jury to hear the detective's testimony regarding appellant's "self-serving, very limiting" and deceptive answers was harmless.

{¶ 27} Appellant also argues that the detective's interpretation of appellant's reactions during the interview denied him the right to confrontation in violation of *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354 (2004). In *Crawford*, the United States Supreme Court held that the Confrontation Clause bars "testimonial statements of a witness who did not appear at trial unless [the witness] was unavailable to testify, and the defendant had a prior opportunity for cross-examination." *Id.* at 53–54. *Crawford* does not apply to the detective's testimony about appellant's statements because appellant is the accused. *Davis*, 2008-Ohio-2 at ¶ 127.

{¶ 28} Finally, appellant argues his trial counsel was ineffective because he not only failed to "make these critical issues abundantly clear" to the trial court, he also "extensively" cross-examined the detective regarding "his purported expertise in body language."

{¶ 29} To establish ineffective assistance of counsel, appellant must show that his trial counsel's performance was both deficient and prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989). With respect to deficiency, appellant must show that his counsel's performance "fell below an objective standard of reasonableness." *Strickland* at 688. With respect to prejudice, appellant must show that there is a reasonable probability that, but for his counsel's

unprofessional errors, the outcome of the proceeding would have been different. *Id.* at 694. "A defendant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other." *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000); *State v. Gilbert*, 12th Dist. No. CA2010-09-240, 2011-Ohio-4340, ¶ 73.

{¶ 30} We disagree with appellant's assertions that defense counsel failed to "make these critical issues abundantly clear" to the trial court and "extensively" cross-examined the detective regarding "his purported expertise in body language." In addition, in light of our holding that the admission of the detective's testimony was harmless error, we find that appellant has not met the prejudice prong of the *Strickland* test. *See Davis*, 2008-Ohio-2 at ¶ 132. Appellant did not receive ineffective assistance of counsel at trial.

{¶ 31} Appellant's first and second assignments of error are overruled.

{¶ 32} Assignment of Error No. 3:

{¶ 33} THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW AND/OR AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE TO SUSTAIN APPELLANT'S CONVICTIONS.

{¶ 34} Although appellant's assignment of error asserts that his aggravated robbery conviction was supported by insufficient evidence and was against the manifest weight of the evidence (and provides the applicable standards of review), his argument only challenges the detective's testimony regarding appellant's body language and truthfulness. We choose substance over form and will address the issues raised in appellant's argument rather than those raised in his assignment of error. *See Elyria v. Tress*, 73 Ohio App.3d 5 (9th Dist.1991).

{¶ 35} Appellant first argues that the trial court erred in allowing the detective to testify about appellant's body language and truthfulness because such testimony violated appellant's confrontation rights. We addressed and rejected these issues under appellant's

first and second assignments of error. Appellant's argument is accordingly not well-taken.

{¶ 36} Appellant also argues that the detective's testimony regarding appellant's body language was improperly allowed because the detective was never properly established as an expert in body language in violation of Evid.R. 702. According to appellant, "[n]ot one scintilla of evidence was offered to establish the Prosecutor's position that the Detective was an expert in testifying to the Appellant's body language."

{¶ 37} Appellant's argument is not well-taken. The state never offered the detective as an expert in body language. The trial court specifically found that the detective was not an expert. The court also indirectly found that because the detective was testifying as a layperson, his testimony about appellant's body language was admissible. Thus, Evid.R. 702 is not applicable. The detective did not provide expert testimony. Rather, he testified about his training and experience in conducting interviews, specifically including what matters to observe. He then testified about his observations of appellant during the interviews. The detective observed appellant, and appellant's demeanor was relevant in showing his evasiveness and reticence. *See Davis*, 2008-Ohio-2 at ¶ 120 (finding that a detective's testimony about a defendant's reaction during an interview satisfied both requirements of Evid.R. 701 and was admissible as lay opinion).

{¶ 38} Appellant's third assignment of error is overruled.

{¶ 39} Assignment of Error No. 4:

{¶ 40} THE TRIAL COURT ERRED IN IMPOSING AN EIGHT YEAR SENTENCE FOR THE CONVICTIONS HEREIN.

{¶ 41} Appellant argues that because the trial court acknowledged during the sentencing hearing that it could not predict appellant's future behavior and likelihood of recidivism based on his criminal record, the trial court abused its discretion in sentencing him to eight years in prison.

{¶ 42} Appellate courts apply a two-step procedure when reviewing felony sentences. First, an appellate court must review the sentence to determine whether the sentence is clearly and convincingly contrary to law. *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, ¶ 26. If this first prong is satisfied, the sentencing court's decision is then reviewed for an abuse of discretion. *Id.* at ¶ 4. An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, ¶ 181.

{¶ 43} Under the first prong of *Kalish*, a sentence is not clearly and convincingly contrary to law where the trial court considers the purposes and principles of sentencing under R.C. 2929.11 as well as the seriousness and recidivism factors listed in R.C. 2929.12, properly applies postrelease control, and sentences a defendant within the permissible statutory range. *Kalish* at ¶ 18; *State v. Jones*, 12th Dist. No. CA2012-03-049, 2013-Ohio-150, ¶ 48.

{¶ 44} Upon review of the record, we find that appellant's sentence is not contrary to law. The trial court stated it considered the purposes and principles of sentencing under R.C. 2929.11 and balanced the seriousness and recidivism factors listed in R.C. 2929.12. *Kalish*, 2008-Ohio-4912 at ¶ 18. Moreover, the trial court properly applied postrelease control and sentenced appellant within the applicable statutory range.

{¶ 45} We further find that the trial court did not abuse its discretion in sentencing appellant to eight years in prison. Appellant is correct that during the sentencing hearing, the trial court acknowledged that appellant's criminal record was not a good predictor of his likelihood of recidivism, unlike other offenders. However, the trial court also emphasized the seriousness and egregiousness of the offense, regardless of whether the gun was unloaded, the fact the robbery was calculated, and the physical harm and serious psychological harm suffered by Hayes. The trial court also considered appellant's juvenile criminal record which

revealed he was adjudicated delinquent multiple times, his criminal record as an adult, and the fact he was under "some form of community control" at the time he committed the robbery.

{¶ 46} In light of the foregoing, appellant's fourth assignment of error is overruled.

{¶ 47} Judgment affirmed.

HENDRICKSON, P.J., and S. POWELL, J., concur.