[Cite as *State v. Bowden*, 2014-Ohio-158.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO.  2013-A-0040** |
| SHARRON L. BOWDEN, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2012 CR 742.

Judgment: Affirmed.

*Thomas L. Sartini*, Ashtabula County Prosecutor and *Shelley M. Pratt,* Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Thomas Rein,* Leader Building, #940, 526 Superior Avenue, Cleveland, OH 44114 (For Defendant-Appellant).

DIANE V. GRENDELL, J.

{¶1}    Defendant-appellant, Sharron L. Bowden, appeals his conviction, following a jury trial, for Felonious Assault.  The issues before this court are whether it was reversible error for police officers to give opinion testimony that Bowden was involved in the assault; whether it was reversible error to allow an officer to testify that Bowden was originally arrested on an unrelated misdemeanor warrant; whether it was reversible error for the court to prohibit the defense from inquiring about possible rape allegations;

and whether the conviction was supported by the sufficiency and the weight of the evidence when based solely on the victim's testimony. For the following reasons, we affirm the decision of the court below.

{¶2} On January 17, 2013, Bowden was indicted by the Ashtabula County Grand Jury on a single count of Felonious Assault, a felony of the second degree in violation of R.C. 2903.11(A)(1). As charged in the Indictment, Bowden, "[o]n or about [November 17, 2012], in the City of Ashtabula * * * did knowingly cause serious physical harm to * * * Erin Lesneski * * *."

{¶3} On January 25, 2013, Bowden entered a plea of not guilty.

{¶4} On May 6 and 7, 2013, a jury trial was held. The following witnesses appeared and gave testimony on behalf of the State:

{¶5} Erin Lesneski testified that, on November 17, 2012, she had planned to attend a fish fry with her friend, Akiya Jackson. Instead, Lesneski was driven by a friend, named Jack, to Bowden's residence on West 38th Street, off Station Avenue. Lesneski had dated Bowden for "a couple weeks" in October, and did not feel comfortable being there. Initially, Lesneski remained in Jack's car, but went inside after Bowden assured her that "you're okay" and "no problems."

{¶6} There were several persons at the residence drinking alcohol. Lesneski admitted to being intoxicated. Bowden introduced his "new girlfriend" to Lesneski as Amy (later identified as Alexis Lou Newsome). Lesneski had met Amy previously at Bowden's residence and they "didn't really care for each other."

{¶7} At some point in the evening, Lesneski went upstairs to use the bathroom. As she was returning downstairs, Jack called Lesneski into an upstairs bedroom and

"tried to entice [her] into bed." Lesneski asked that she be driven to the fish fry. Bowden entered the bedroom and began yelling at Lesneski because "something wasn't right" with curtains or blinds in the bedroom and Bowden "was very particular about his mother's house." When he saw Jack in the bedroom, Bowden began to call Lesneski "vulgar names," shoved her, and pulled her pants (blue jeans) completely off. Amy entered the bedroom and "everybody * * * started arguing."

{¶8} At this point, Lesneski "tried to leave." Bowden pushed Lesneski down the stairs, and he and Amy began "punching and kicking" her. Lesneski crawled out the front door while Bowden was "yelling things" at her and threw something. Outside, Lesneski stood up and began running and walking toward U.S. Route 20. Lesneski was "bleeding * * * severely," had an eye swollen shut, "could barely breathe," and was "staggering because [she] was beaten so severely."

{¶9} Lesneski was able to flag down a police cruiser. She directed the officer to Bowden's house but, initially, only identified Amy as the assailant "because [she] was upset, * * * scared, and * * * hysterical." Lesneski was eventually taken to MetroHealth Medical Center in Cleveland, where she was treated for multiple hematomas around her head, a broken nose, and cervical sprain.

{¶10} Akiya Jackson testified that she had planned to meet Lesneski at a fish fry, but that Lesneski never arrived.

{¶11} Patrolman Christopher Defina of the Ashtabula Police Department testified that, on the evening of November 17, 2012, he was located at West 43rd Street and Route 20 when he noticed a woman "stumbling down the sidewalk," "her face covered in blood," and wearing "what appeared * * * a black dress." Lesneski was hysterical and

3

advised Defina that she had been assaulted by a girl named Amy at Bowden's residence. After an ambulance arrived for Lesneski, Defina went to Bowden's residence at 623 West 38th Street, accompanied by other police officers.

{¶12} Outside, Patrolman Defina found a black jacket in the driveway, noticed blood on the front storm door, and was advised of a light being turned on and off upstairs. Defina knocked on the front door and, after about fifteen to twenty minutes, Bowden opened the door. Bowden did not comply with Defina's order to step outside. Another officer arrested Bowden and Defina entered the residence. In the upstairs bedroom, Defina noted that the blinds were disrupted, there was a pair of blue jeans (inside out) on the floor, and a small refrigerator had blood on its door. Defina also noted that a handrail on the stairs was pulled out of the wall.

{¶13} The following day, Patrolman Defina interviewed Bowden. According to Bowden, Lesneski was having sex with Jack Patton upstairs and came downstairs "half naked" and "flaunting her stuff." Lesneski's conduct made Newsome jealous so she "beat up the victim." Beyond this, Bowden "didn't really say much about it." Defina found no evidence of a struggle occurring in the downstairs living room, which he described as "very orderly." Defina noted that Bowden had a scratch on the side of his neck, which Bowden claimed Newsome had given him prior to Lesneski's arrival.

{¶14} Lieutenant Dennis Dibble of the Ashtabula Police Department testified that, on the evening of November 17, 2012, he assisted Patrolman Defina's investigation of the assault on Lesneski. Dibble described Bowden's demeanor on the night in question as "very agitated, giving a hard time, * * * "[t]elling [the officers] that [they] didn't have a right to be there."

4

**{¶15}** Inside Bowden's residence, Lieutenant Dibble found Newsome hiding underneath a bed in the basement. In an upstairs bedroom, he noted "some blood on a * * * bedspread," "curtains ripped down," "blood * * * on a small refrigerator by the bed," and "Ms. Lesneski's other shoe in the same bedroom along with her pants, which were inside out." Dibble also observed "a handrail in the hallway which had been ripped from the wall."

**{¶16}** Patrolman Jason Erwin of the Ashtabula Police Department testified that he assisted Patrolman Defina and Lieutenant Dibble in the investigation of the assault. Early on the morning of November 18, 2012, Erwin interviewed Bowden. In this interview, Bowden stated that Lesneski had arrived at his residence with Jack Patton and that, during the course of the evening, they had gone upstairs to have sex. At some point, Bowden went upstairs and noticed that a curtain rod had been knocked off the wall in the bedroom. Bowden told Lesneski to fix it and she refused. During this exchange, Newsome "came upstairs and the two females started arguing, and that escalated into a physical fight."

**{¶17}** Patrolman Erwin noted that "there was a scrape or scratch on [Bowden's] neck that was still fresh," which Bowden claimed "happened between him and his girl," i.e., Newsome.

**{¶18}** Later that morning, Patrolman Erwin interviewed Lesneski upon her release from MetroHealth. In this interview, she claimed that both Bowden and Newsome had assaulted her.

**{¶19}** That evening, Patrolman Erwin interviewed Bowden a second time with Patrolman Defina present. On this occasion, Bowden stated that the incident happened

5

downstairs and that he watched the fight from the living room couch. When asked about the blood in the upstairs bedroom, Bowden stated that Lesneski "must have gone upstairs to look for her pants."

{¶20} At the close of the State's case, Bowden moved the trial court for acquittal, which the court denied.

{¶21} The jury returned a guilty verdict for Felonious Assault.

{¶22} On June 27, 2013, the trial court issued its Judgment Entry of Sentence, imposing a prison term of four years, three years of mandatory post-release control, and restitution in the amount of $25,331.

{¶23} On July 23, 2013, Bowden filed his Notice of Appeal. On appeal, Bowden raises the following assignments of error:

{¶24} "[1.] The State failed to present sufficient evidence to sustain a conviction against Appellant."

{¶25} "[2.] Appellant's conviction is against the manifest weight of the evidence."

{¶26} "[3.] Appellant was denied a fair trial by the witness' improper comments while testifying."

{¶27} "[4.] The trial court erred when it admitted other acts testimony in violation of R.C. 2945.59, Evid.R. 404(B) and Appellant's rights under Article I, Section 10 of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution."

{¶28} "[5.] The trial court erred in violation of the Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Ohio Constitution which provide rights to confrontation and cross-examination when it did not

6

permit Appellant to inquire about the rape allegations made by the victim to the police in this case."

{¶29} Bowden's first assignment of error asserts that there was insufficient evidence to support a conviction for Felonious Assault.

{¶30} "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." Crim.R. 29(A). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶31} Bowden raises several arguments: there is no reliable evidence that he committed any crime; there is no sustainable evidence that he caused Lesneski serious physical harm; and there is no evidence that he had any criminal intent.

{¶32} In order to convict Bowden of Felonious Assault, the State was required to prove, beyond a reasonable doubt, that he "knowingly * * * [c]ause[d] serious physical harm to another." R.C. 2903.11(A)(1).

{¶33} Contrary to Bowden's arguments, Lesneski's testimony that he shoved, punched, and kicked her, thereby causing the injuries amply attested by witness testimony and photographic evidence, is sufficient to sustain his conviction. With respect to serious physical harm, it is well-established that this element may be

reasonably inferred "[w]here injuries to the victim are serious enough to cause him or her to seek medical treatment." (Citations omitted). *State v. Littlejohn*, 8th Dist. Cuyahoga No. 95380, 2011-Ohio-2035, ¶ 21; *State v. Higgins*, 9th Dist. Summit No. 26120, 2012-Ohio-5650, ¶ 17 (cases cited). With respect to intent, "[i]t is a fundamental principle that a person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts." *State v. Johnson*, 56 Ohio St.2d 35, 39, 381 N.E.2d 637 (1978). Lesneski's injuries were the natural, reasonable, and probable consequence of being shoved, punched, and kicked. Bowden's intent to cause them is reasonably inferred.

**{¶34}** The first assignment of error is without merit.

**{¶35}** Under the second assignment of error, Bowden attempts to discredit Lesneski's testimony as that of a "drunken victim," who only identified him as an assailant after the police had been to his house.

**{¶36}** "To reverse a judgment of a trial court on the weight of the evidence [under Section 3(B)(3), Article IV of the Ohio Constitution], when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), paragraph four of the syllabus. "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but

8

depends on its *effect in inducing belief*.'" (Emphasis sic.) *Id.* at 387, quoting *Black's Law Dictionary* 1594 (6 Ed.1990).

{¶37} An appellate court determining whether a verdict is against the manifest weight of the evidence must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶38} In the present case, the jury did not lose its way so as to create a manifest miscarriage of justice by crediting Lesneski's testimony. Lesneski's intoxication and failure to initially identify Bowden as an assailant do not render her testimony wholly unbelievable or incredible, although they have some bearing on its weight. Lesneski's account of the assault is consistent with the physical evidence found at Bowden's residence. Bowden's account of the incident, as related through the police officers' testimony, was self-contradictory and inconsistent with the physical evidence. The greater weight of credible evidence supports Bowden's conviction.

{¶39} The second assignment of error is without merit.

{¶40} In the third assignment of error, Bowden contends that he was denied a fair trial by the admission of opinion testimony as to his veracity given by the State's witnesses.

{¶41} "[A] trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake Cty.*, 58 Ohio St.3d

9

269, 271, 569 N.E.2d 1056 (1991). Where defense counsel fails to object at trial, the admission of testimony must constitute plain error, defined as error that is obvious and outcome-determinative, to justify reversing the judgment or conviction. *State v. Land*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 108; Crim.R. 52(B) ("[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court").

{¶42} Bowden relies upon a line of cases which stand for the proposition that "[a] police officer's opinion that an accused is being untruthful is inadmissible." *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 122. Under this line of cases, statements such as the defendant was being deceptive/untruthful or, conversely, vouching for the credibility of the State's witnesses, are improper. *Id.* at ¶ 123 (detective testified that defendant "was being very deceptive"); *State v. Carpenter*, 12th Dist. Clermont No. CA2012-06-041, 2013-Ohio-1385, ¶ 23 (detective testified that he "was not getting the complete truth" from the defendant and that "there was some deception there"); *State v. Vanek*, 11th Dist. Lake No. 2002-L-130, 2003-Ohio-6957, ¶ 37 (detective "gave his personal opinion as to the truth of Ziburis's statements to the Mentor Police Department"). This court has recognized the likelihood of the jury being influenced by a police officer's opinion regarding a witness' credibility. *State v. Withrow*, 11th Dist. Ashtabula No. 2011-A-0067, 2012-Ohio-4887, ¶ 47.

{¶43} In a similar line of cases, Ohio appellate courts have held that it is reversible error to allow a witness to testify or comment on the credibility of another witness. *State v. Bajaj*, 7th Dist. Columbiana No. 03 CO 16, 2005-Ohio-2931, ¶ 72 ("[i]t is reversible error to admit testimony from a purported expert or lay witness attesting to

10

the believability of another's statements"); *State v. Kovac*, 150 Ohio App.3d 676, 2002-Ohio-6784, 782 N.E.2d 1185, ¶ 32 (2nd Dist.) ("the trial court errs when it permits a lay witness to testify concerning another witness' veracity"); *State v. Huff*, 145 Ohio App.3d 555, 561, 763 N.E.2d 695 (1st Dist.2001) ("[t]he opinion of a witness as to whether another witness is being truthful is inadmissible").

{¶44} Although opinion testimony regarding the truthfulness of a witness is inadmissible, a witness may give "testimony in the form of opinions or inferences * * * which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Evid.R. 701. "Testimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact." Evid.R. 704. Construing Evidence Rules 701 and 704, the Ohio Supreme Court has observed that "[t]estimony expressing an opinion on whose version is more likely to be true would certainly aid the jury in reaching its conclusion." *State v. Crotts*, 104 Ohio St.3d 432, 2004-Ohio-6550, 820 N.E.2d 302, ¶ 27.

{¶45} In the first instance, Lesneski testified that her relationship with Bowden had been sexual. The prosecutor asked her, without objection: "So if [Bowden] told the police officers that he never had sex with you, that'd be a lie?" Lesneski answered affirmatively. Bowden claims this question allowed Lesneski to offer her opinion that he is a liar.

{¶46} The type of question posed to Lesneski, often referred to as a "were they lying" question, has been widely condemned in most federal and state jurisdictions. *United States v. Schmitz*, 634 F.3d 1247, 1268-1269 (11th Cir.2011) (primarily

11

addressing whether such questions may properly be asked of a criminal defendant); *United States v. Dickens*, 6th Cir. No. 09-4529, 2011 U.S. App. LEXIS 14800, 12 (July 19, 2011) ("the general principle that credibility determinations are meant for the jury, not witnesses, applies" when "asking a defendant whether other witnesses are lying"); *State v. Leutschaft*, 759 N.W.2d 414, 420-422 (Minn.App.2009) (cases cited); *Liggett v. Colorado*, 135 P.3d 725, 729-732 (Colo.2006) (cases cited). Such questions are criticized for eliciting information (whether another witness is lying) beyond the testifying witness' competence and invading the jury's province with respect to witness credibility. *Schmitz* at 1269; *Liggett* at 731-732. Even in jurisdictions relatively tolerant of "were they lying" questions, such questions are recognized as "hav[ing] no probative value and [being] argumentative because they do not assist the jury." *Leutschaft* at 421.

**{¶47}** We are aware of no Ohio cases directly addressing the propriety of such questions.

**{¶48}** Although disfavored, such questioning is generally subject to a harmless error analysis, or, in the present case, a plain error analysis. *Schmitt* at 1268; *Liggett* at 733. Here, the issue of whether Lesneski and Bowden had sex during their October relationship is irrelevant to the issue of Bowden's guilt. While Lesneski opined that Bowden was lying, her opinion on this point was minimally prejudicial. The only material discrepancy between Lesneski's testimony and Bowden's statements to the police was whether Bowden participated in the assault. Since Bowden did not testify at trial, the jury's estimation of Lesneski's credibility was crucial. Lesneski's opinion as to whether Bowden was lying on a collateral issue does little to either bolster or impinge her own credibility. The case law primarily focuses on the situation where police officers proffer

12

their opinion of the defendant's or some other witness' credibility or the situation where the defendant is forced to testify that other witnesses are lying. In these situations, the defendant is placed in a "no-win" situation: "If the defendant says the other witness *is* lying, then the defendant is put in the position of calling someone a liar, a particularly unenviable state when the other witness is a law enforcement officer. * * * If the defendant says a contradictory witness is *not* lying, then a fair inference is that the *defendant* is lying." *State v. Graves*, 668 N.W.2d 860, 872 (Iowa 2003). In the present matter, this sort of prejudice is not operative. As a witness, Lesneski did not enjoy the natural deference or confidence that is accorded to police officers. Nor does Lesneski's claim to have slept with the man who she identified as her assailant inspire confidence in her testimony on the latter point. Lesneski's opinion that Bowden lied about an irrelevant aspect of their former relationship, at most, amounted to a distraction in the jury's consideration of whether Lesneski was lying about Bowden's participation in the assault.

{¶49} Bowden challenges the following question posed, without objection, by the prosecutor to Patrolman Defina, following his testimony that Bowden claimed the incident happened downstairs: "Are you aware that [Bowden] had made a previous statement to Jason Erwin that was contrary to what he told you?" Defina responded: "I'm aware of it. I was not present when that statement [to Erwin] was made." Defina's testimony that he was aware of a prior inconsistent statement made by Bowden does not constitute an impermissible opinion as to the veracity of either statement. *State v. Adrian*, 168 Ohio App.3d 300, 2006-Ohio-4143, 859 N.E.2d 1007, ¶ 55 (2nd Dist.) (a sheriff's "statement that Adrian's version of events appeared inconsistent with [a prior]

recorded conversation * * * did not constitute an opinion that Adrian was lying to the officers"); *State v. Burchett*, 12th Dist. Preble Nos. CA2003-09-017 and CA2003-09-018, 2004-Ohio-4983, ¶ 20 ("Deputy Bratton's testimony expressed to the jury merely that Murray had offered two conflicting statements").

{¶50} Bowden challenges the following statement made by Patrolman Defina, without objection, explaining why he returned to Bowden's residence after Bowden claimed that the assault occurred downstairs, rather than upstairs: "I simply went back to the house to obtain any evidence in [Bowden's] defense. I was trying to make sure that he wasn't telling me the truth [sic]." The initial search of Bowden's residence focused on the upstairs bedroom, where Bowden initially claimed the incident took place and where evidence, such as Lesneski's blood and pants, were found. When Bowden changed the location of the assault to the downstairs living room, the police officers conducted another search of the residence, focusing on the living room. Defina's statement was not an opinion regarding Bowden's truthfulness, but an explanation for the second search of the residence. *State v. Patterson*, 3rd Dist. Hancock No. 5-11-15, 2012-Ohio-2839, ¶ 89 (detective's testimony that, "after law enforcement began to theorize that Patterson fired the weapon * * *, he re-interviewed Trausch * * * was properly admitted for the purpose of showing the investigatory process"); *State v. Monroe*, 8th Dist. Cuyahoga No. 94768, 2011-Ohio-3045, ¶ 34 ("an officer is not vouching for a witness[']s credibility by explaining the investigative procedure he followed").

{¶51} Bowden challenges the following exchange between the prosecutor and Patrolman Defina, without objection:

14

**{¶52}** Prosecutor: Is there any doubt in your mind whatsoever that an assault occurred?

**{¶53}** Ptl. Defina: An assault definitely occurred.

**{¶54}** Prosecutor: And that either one or both of them participated in this assault?

**{¶55}** Ptl. Defina: Someone participated in the assault, yes.

**{¶56}** Prosecutor: I'm talking about the two suspects.

**{¶57}** Ptl. Defina: Yes. There's not a doubt in my mind that they participated in it.

**{¶58}** Bowden raises a similar challenge to testimony elicited, without objection, from Lieutenant Dibble:

**{¶59}** Prosecutor: And in response to the [defense attorney's] question about [the anticipated] charges, do you decide what charges are filed against people that you arrest?

**{¶60}** Lt. Dibble: Not that we file, no. * * * All we can do is an initial recommendation for charges.

**{¶61}** Prosecutor: Alright. And in this case when the Defendant was taken into custody, did you believe that he had participated in a felonious assault?

**{¶62}** Lt. Dibble: Yes.

**{¶63}** Bowden characterizes this testimony as impermissible opinion testimony as to his guilt. While the police officers testified to their belief that Bowden took part in the assault, Lieutenant Dibble and Patrolman Defina both observed Lesneski's condition

15

on the night of the assault, were present when Bowden was taken into custody, and participated in the search of Bowden's residence. Based on their investigation, they concluded that Bowden was involved in the assault so as to charge him with that crime. *Compare State v. Trefney*, 11th Dist. Portage No. 2011-P-0032, 2012-Ohio-869, ¶ 45 (deputy's "testimony that she believed she had probable cause to prepare the charge for domestic violence and arrest Mr. Trefney is permissible under Evid.R. 701").

**{¶64}** Assuming, arguendo, that Lieutenant Dibble's and Patrolman Defina's testimony was improper, it was harmless error and, therefore, did not rise to the level of plain error. Lesneski's testimony and Bowden's vacillating explanation of events provided compelling evidence of Bowden's guilt, rendering the police officers' testimony harmless.

**{¶65}** The third assignment of error is without merit.

**{¶66}** In the fourth assignment of error, Bowden contends the following testimony elicited from Patrolman Erwin constituted "evidence of other crimes, wrongs, or acts," impermissible under Evidence Rule 404(B) "to prove the character of a person in order to show that he acted in conformity therewith." Erwin testified, without objection, as follows:

**{¶67}** [Bowden] seemed intoxicated, highly confrontational, agitated. As soon as he was removed from the house for safety purposes everybody was handcuffed and secured on the front porch. He was screaming and yelling obscenities, that we had no right to be there, he didn't do anything wrong, that we couldn't go in his house. We had no right to handcuff him. To the point where we couldn't even

16

speak amongst ourselves to figure out what to do next.  We found

out that he did have a misdemeanor warrant at the time so we just

decided to place him under arrest and put him in the back seat of a

patrol car where he couldn't be any more of a disturbance.

**{¶68}**  We find no error.  The reference to Bowden's outstanding misdemeanor warrant was not proffered as character evidence, but merely to explain his removal from the residence during the investigation.  Nothing was revealed about the identity of the underlying charge and Patrolman Erwin's testimony was the sole reference to an outstanding warrant.  Our holding is consistent with that of other appellate courts in similar situations. *State v. Warren*, 4th Dist. Ross No. 12CA3324, 2013-Ohio-3542, ¶ 34 (Evid.R. 404(B) was not violated where "nothing was revealed about the specific crime charged" and "[t]here was also no attempt to show appellant acted in conformity with criminal behavior by introducing the evidence of an outstanding warrant"); *State v. Southam*, 3rd Dist. Henry No. 7-12-04, 2012-Ohio-5943, ¶ 20 (the deputy's "brief and inadvertent [reference to 'a couple of warrants'] in this case was not the type of testimony about 'prior bad acts' that is usually prohibited in Evid.R. 404").

**{¶69}**  The fourth assignment of error is without merit.

**{¶70}**  Bowden contends, in his fifth and final assignment of error, that the trial court erred by not allowing him to cross-examine Lesneski about rape allegations that she allegedly made against him.

**{¶71}**  "Cross-examination shall be permitted on all relevant matters and matters affecting credibility."  Evid.R. 611(B).  "The limitation of such cross-examination lies

within the sound discretion of the trial court, viewed in relation to the particular facts of the case." *State v. Acre*, 6 Ohio St.3d 140, 145, 451 N.E.2d 802 (1983).

{¶72} In the present case, counsel for Bowden argued before the court that "the Defendant on the night of the incident made statements to the Ashtabula Police that according to the police reports provided in discovery, indicate that at some point in time initially Mr. Bowden was considered a rape suspect." Counsel wanted to question Lesneski regarding the rape allegations to emphasize "the fact that the Defendant told a number of different stories."

{¶73} The trial judge responded by stating that it was the court's understanding that the possibility of rape was raised by third persons involved in the investigation, not by Lesneski herself, and that Lesneski never adopted these statements or otherwise claimed to have been raped on the night in question. To allow cross-examination on the issue, the court concluded, would not significantly bear on Lesneski's credibility while confusing to the jury.

{¶74} Counsel for Bowden argued, more specifically, that the rape allegation was contained in Lieutenant Dibble's written police report, and that it "would have clearly had to come from [Lesneski], which would show that again her stories are inconsistent."

{¶75} The trial court again refused Bowden's counsel:

{¶76} The only comment the Court might have is what you were reading *

* * doesn't give any indication of where or how [Lieutenant Dibble] may have come up with that, and certainly it's not attributed to the victim in his report, whatever he was thinking. I mean, there is

18

evidence in this case also that her pants were pulled off. We have her version of what, how that came to be. But I mean, she's walking around in the street with nothing on except a t-shirt. I mean, I think it would be reasonable for somebody to think this could be a sex offense, even if she didn't say a word about it. But it's not a sex offense, and I think again it would just be confusing to the jury if we start going into that kind of thing.

**{¶77}** We find no abuse of discretion in the trial court's ruling. If the allegation of rape cannot be fairly attributed to Lesneski and the issue was not raised on direct examination, it is within the court's discretion to prohibit the defense from raising the issue on cross-examination.

**{¶78}** The fifth and final assignment of error is without merit.

**{¶79}** For the foregoing reasons, the judgment of the Ashtabula County Court of Common Pleas is affirmed. Costs to be taxed against appellant.


TIMOTHY P. CANNON, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.

19