[Cite as *State v. Freetage*, 2021-Ohio-4050.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2020-P-0083 |
| Plaintiff-Appellee, | |
| - v - | Criminal Appeal from the Court of Common Pleas |
| DANIEL J. FREETAGE, | Trial Court No. 2020 CR 00176 |
| Defendant-Appellant. | |

**O P I N I O N**

Decided: November 15, 2021
Judgment: Vacated in part, affirmed in part; remanded

*Victor V. Vigluicci,* Portage County Prosecutor, and *Theresa M. Scahill,* Assistant Prosecutor, 241 S. Chestnut Street, Ravenna, OH 44266 (for Plaintiff-Appellee).

*Thomas Rein*, 820 W. Superior Avenue, Suite 800, Cleveland, OH 44113 (for Defendant-Appellant).

JOHN J. EKLUND, J.

{¶1} Appellant, Daniel Freetage, appeals his convictions of three counts of felonious assault in violation of R.C. 2903.11(A)(2) and R.C. 2903.11(D)(1)(a), the indefinite sentencing imposed under the Reagan Tokes Act, and the sentencing court's failure to notify him of mandatory post-release control.

**Substantive and Procedural History**

{¶2} On February 10, 2020, an undercover detective was driving on State Route 14 when he saw Appellant's truck in an abandoned parking lot without license plates. The

detective approached Appellant driver's window to driver's window and identified himself as a police officer since he was not in a police vehicle and was wearing plain clothing.

{¶3} The detective asked Appellant what he was doing, and Appellant said he had picked up a freezer off the highway and stopped in the parking lot to look in the dumpster for scrap. The detective then asked Appellant where his license plates were. Appellant said he bought the car the night before and did not have the plates yet. The detective asked Appellant the same question three times. After the third time, Appellant turned away and returned to the window with a twelve-gauge sawed-off shotgun which he pointed at the detective. Appellant did not say anything, nor did he make any verbal threats.

{¶4} The detective ducked and drove to a safer area in the parking lot. Appellant exited the parking lot and the detective pursued him with his lights and sirens activated. During the pursuit, Appellant applied his brakes and reversed his car toward the detective. The closest Appellant came to the detective was 50 yards. The detective reversed backward to avoid a collision, driving eastbound on a westbound lane. Appellant sped forward and the pursuit continued.

{¶5} After resuming pursuit, Appellant once again applied his brakes, reversing toward the detective. The closest Appellant came to the detective was 30-40 yards. The detective avoided the Appellant. Appellant once again sped up and the detective lost pursuit.

{¶6} Later that day, the police discovered Appellant's name and current address. After arriving at the address, police saw the truck, but Appellant was not there. Appellant's

2

friend called the police informing them that Appellant was hiding in his basement. The police arrived at the friend's house and arrested Appellant.

{¶7} The next day, the friend called the police and said Appellant had left a shotgun on the kitchen table, which police did not see earlier because it was night-time and the house did not have working electricity. The police confiscated the gun.

{¶8} Appellant was indicted for 1) felonious assault with a firearm specification for pointing a shotgun at the detective in violation of R.C. 2903.11(A)(2) and R.C. 2903.11(D)(1)(a); 2) one count of felonious assault for the first time reversing his vehicle toward the detective in violation of R.C. 2903.11(A)(2) and R.C. 2903.11(D)(1)(a); and 3) one count of felonious assault for reversing his vehicle the second time toward the detective in violation of R.C. 2903.11(A)(2) and R.C. 2903.11(D)(1)(a).[1]

{¶9} At trial, a jury found Appellant guilty on six counts. Appellant was sentenced to imprisonment for 10 to 15 years for the first count of felonious assault and three years for the firearm specification; 10 years imprisonment for the second count of felonious assault; 10 years imprisonment for the third count of felonious assault; 24 months imprisonment for having weapons under disability; 12 months imprisonment for unlawful possession of dangerous ordnance, and 24 months imprisonment for failure to comply. The court ordered each sentence to be served concurrently, except the prison term imposed for the firearm specification to count one of felonious assault.

---

[1] Other indictments not relevant to this appeal were: having weapons under disability; unlawful possession of dangerous ordnance; failure to comply with order or signal of police officer; improperly handling of a firearm in a motor vehicle, and carrying a concealed weapon.

Case No. 2020-P-0083

{¶10} At the sentencing hearing, the court of common pleas failed to notify Appellant of his mandatory post-release control, although it was incorporated in the sentencing journal entry.

**Law and Analysis**

{¶11} "ASSIGNMENT OF ERROR 1:  THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AGAINST APPELLANT."

{¶12} "ASSIGNMENT OF ERROR 2:  APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶13} "'Sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.  Black's Law Dictionary (6 Ed.1990) 1433.  See, also, Crim.R. 29(A)." *State v. Thompkins*, 78 Ohio St. 3d 380, 386, 678 N.E.2d 541.  See, also, Crim.R. 29(A).  The appellate court's standard of review when reviewing the sufficiency of the evidence presented at trial is to determine after viewing the evidence in a light most favorable to the prosecution whether a rational trier of fact could find the essential elements of the crime proven beyond a reasonable doubt.  *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.  A conviction based on legally insufficient evidence is a denial of due process, and a reviewing court does not consider the manifest weight of the evidence if it finds the state did not present sufficient evidence*. Thompkins*, at 386.

{¶14} "Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to

4

their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics but depends on its effect in inducing belief." *Id.* at 387. Whereas sufficiency relates to the evidence's adequacy, weight of the evidence relates the evidence's persuasiveness. *Id.* The reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin,* 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983).

{¶15} R.C. 2903.11(A)(2) provides that: "No person shall knowingly * * * Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."

> "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact." R.C. 2901.22(B).

{¶16} R.C. 2923.02(A) defines the crime of Attempt to Commit an Offense: "No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct which, if successful, would constitute or result in the offense." The Ohio Supreme Court has held that the "conduct"

5

referred to in R.C. 2923.02(A) is "an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." *State v. Woods*, 48 Ohio St.2d 127, 357 N.E.2d 1059, (1976), paragraph one of the syllabus. Conduct is not a "substantial step" unless it is "strongly corroborative of the actor's criminal purpose." *Id.*

{¶17} For felonious assault, physical harm is injury that could be serious enough to cause the victim to seek medical treatment. *State v. Bowden*, 11th Dist. Ashtabula No. 2013-A-0040, 2014-Ohio-158, ¶ 33.

{¶18} Appellant first contends that the state failed to present sufficient evidence to convict him of felonious assault for pointing a shotgun at the detective under count one because pointing a gun alone does not show he knowingly attempted to cause physical harm. Appellant is correct.

{¶19} In *State v. Brooks*, 44 Ohio St. 3d 185, 542 N.E.2d 636 (1989), the Supreme Court of Ohio considered "whether the mere pointing of a deadly weapon, without more, is sufficient evidence of the offense felonious assault" under R.C. 2903.11(A)(2). *Id.* at 187. The Court held "[t]he act of pointing a deadly weapon at another, without additional evidence regarding the actor's intention, is insufficient evidence to convict the defendant of 'felonious assault'" as defined by R.C. 2903.11(A)(2). *Id.* at Syllabus, 192. Elaborating, the Court said, "the act of pointing a deadly weapon at another is essentially an equivocal act as it relates to the accused's intention to cause physical harm to another by use of that weapon." *Id.* at 192.

{¶20} In *Brooks*, the defendant (who had a prior conviction of manslaughter) "became embroiled in a volatile argument" with a barmaid at a lounge during which he

6

drew a revolver, pointed it at her and said, "Bitch, I will kill you." *Id.* at 187. The Court noted that he spoke "angrily" (*Id.* at 192) and that less than two months before the incident at the lounge, the defendant allegedly had shot a deadly weapon at a driver-occupied taxicab during a dispute with the driver. *Id.* at 186. "Under these circumstances", the Court could not say that a reasonable jury could not have found the defendant's conduct was "strongly corroborative" of an intent to cause physical harm to the barmaid and reinstated the conviction that the court of appeals had vacated.

{¶21} Here, there is no suggestion in the record that Appellant caused any physical harm to anyone in the parking lot. The only conduct in which he engaged, there and then, was pointing a deadly weapon at the detective. *Brooks* teaches that doing so is merely "an equivocal act as it relates to the accused's intentions" and, without more, is not "strongly corroborative of the actor's criminal purpose." Therefore, it was not a "substantial step" sufficient to prove an attempt to cause physical harm "by use of that deadly weapon [in *Brooks*, a revolver; here, a sawed-off shotgun]." *See*, *Brooks* at 192.

{¶22} The state asserts that Appellant's subsequent acts (driving a truck in reverse at the detective) are additional circumstances which a reasonable jury could find are "strongly corroborative of his criminal purpose" in the parking lot. We disagree for several reasons. First, Appellant's subsequent acts occurred under circumstances materially different from his deadly weapon-pointing. He was fleeing and being pursued by a law enforcement official. Nothing that had happened in the parking lot had risen to such a confrontational level. Second, his conduct involved an entirely different instrumentality – a truck, not a firearm. Third, the acts occurred after the events in the parking lot. The concurrence in *Brooks* did suggest that a jury may be able "to find the

7

act of pointing a deadly weapon is a felonious assault" based on a defendant's actions separated by time and place from his pointing the weapon. 44 Ohio St.36 at 196 (Moyer, J. concurring). Each of the hypotheticals offered as "instructive" involved the defendant's having actually fired a gun prior to the hypothetical gun pointing. *Id.* Given the entirety of the circumstances before us, we cannot find that a reasonable jury could have concluded that the Appellant's *subsequent* actions during a *dangerous pursuit* using a *different* instrumentality were "strongly corroborative" of his criminal purpose for pointing a firearm in the parking lot.

{¶23} Accordingly, we vacate the conviction of count one of felonious assault.

{¶24} Appellant next argues that the state failed to present sufficient evidence to convict him of felonious assault under Counts two and three for twice reversing his truck at the detective.

{¶25} Under R.C. 2923.11(A), a deadly weapon "means any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." "Whether a weapon constitutes a deadly weapon depends on the facts and circumstances of each particular case." *In re Fortney*, 4th Dist. Clark 162 Ohio App.3d 170, 2005-Ohio-3618, 832 N.E.2d 1257, at ¶ 38. "An automobile can be classified as a deadly weapon when used in a manner likely to produce death or great bodily harm." *State v. Taylor*, 5th Dist. Delaware No. 12CAA020007, 2012-Ohio-5029.

{¶26} Appellant contends the state did not present sufficient evidence that he knowingly attempted to cause physical harm to another by means of a deadly weapon when he reversed his truck toward the detective because the only evidence presented

8

was that the Appellant was never closer to the detective than 30-40 yards in one instance and 50 yards in the other instance. The detective testified that the sole reason Appellant did not come closer to him was his ability to brake and drive his vehicle in reverse both times when he saw Appellant reversing toward him. The need to do so was the direct result of Appellant's actions: braking and driving in reverse directly at the detective. A reasonable jury could conclude that Appellant's conduct (stopping, reversing, and driving the truck at the oncoming detective, in volatile circumstances already fraught with danger) were in no sense equivocal acts. Given the circumstances in which they were undertaken, a reasonable jury could find they were strongly corroborative of his intent to cause physical harm to the detective by means of a deadly weapon. Unlike merely pointing a deadly weapon, Appellant's conduct was the equivalent of pointing it, aiming it, shooting it and missing only because the intended victim ducked.

{¶27} We affirm the decision of the Court of Common Pleas of Portage County on counts two and three of felonious assault of Appellant's first assignment of error.

{¶28} Appellant also argues that the count two and three convictions are against the manifest weight of the evidence because he did not come close to the detective's vehicle. Weighing the evidence and the credibility of the testimony, we cannot so find. The detective's testimony that the Appellant applied his breaks and reversed toward the detective is credible enough to find the jury did not clearly lose its way and that no miscarriage of injustice occurred.

{¶29} We affirm the count two and three felonious assault convictions.

9

Case No. 2020-P-0083

{¶30} "ASSIGNMENT OF ERROR 3: THE TRIAL COURT ERRED BY IMPOSING AN INDEFINITE PRISON SENTENCE UPON APPELLANT WHICH IS UNCONSTIUTIONAL."

{¶31} Appellant's third assignment of error argues the indefinite prison sentencing that the Reagan Tokes Act (R.C. 2967.271) imposes is unconstitutional as it violates the separation of powers doctrine and denies him due process under the Ohio Constitution and the United States Constitution.

{¶32} This court describes the Reagan Tokes Act as:

> The Reagan Tokes Act went into effect in Ohio on March 22, 2019. The Act requires a sentencing court imposing a prison term under R.C. 2929.14(A)(1)(a) or (2)(a), on or after the effective date, to order a minimum prison term under that provision and a maximum prison term as determined by R.C. 2929.144(B). The Act also sets forth a presumption that an offender "shall be released from service of the sentence on the expiration of the offender's minimum prison term or on the offender's presumptive earned early release date, whichever is earlier." R.C. 2967.271(B). The offender's presumptive earned early release date is determined under R.C. 2967.271(F), which permits the sentencing court to reduce the minimum term under certain circumstances. R.C. 2967.271(A)(2). The Department of Rehabilitation and Corrections ("DRC") may rebut the R.C. 2967.271(B) presumption if it determines at a hearing that certain statutorily enumerated factors apply. R.C. 2967.271(C). If the DRC rebuts the presumption, it may maintain the offender's incarceration after the expiration of the minimum prison term or presumptive earned early release date for a reasonable period of time, which "shall not exceed the offender's maximum prison term." R.C. 2967.271(D)(1).

*State v. Ferguson*, 11th Dist. Lake No. 2020-L-031, 2020-Ohio-5578, ¶ 8, *appeal accepted*, 162 Ohio St.3d 1410, 2021-Ohio-961, 165 N.E.3d 333.

{¶33} This court has concluded that constitutional challenges to the Reagan Tokes Act are not ripe for review "because it is uncertain whether the offender's release

10

date will extend past the minimum term of imprisonment imposed." *State v. Lavean*, 11th Dist. Lake No. 2020-L-045, 2021-Ohio-1456, ¶ 8.

**{¶34}** Perhaps in light of our precedents, Appellant failed to raise at trial the indefinite sentencing the Reagan Tokes Act imposes. "An appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." *State v. Awan*, 22 Ohio St.3d 120, 122, 489 N.E.2d 277 (1986), quoting *State v. Childs*, 14 Ohio St.2d 56, 236 N.E.2d 545 (1968), paragraph three of the syllabus. However, the appellate court may hear constitutional challenges for the first time on appeal if the court exercises discretion to do so only where there is plain error and the rights and interests involved warrant it. *State v. Weaver*, 11th Dist. Trumbull No. 2013-T-0066, 2014-Ohio-1371, ¶12. When the court hears an appeal for plain error, it must presume the constitutionality of the statute at issue and will not invalidate it unless the challenger establishes that it is unconstitutional beyond a reasonable doubt. *Ferguson*, at ¶ 12.

**{¶35}** Here, since Appellant did not raise at trial the constitutionality of the indefinite sentencing that the Reagan Tokes Act imposes, we must only exercise discretion to hear the appeal if there is plain error. Presuming the constitutionality of the statute, Appellant failed to prove plain error that the Reagan Tokes Act is unconstitutional beyond a reasonable doubt. We decline to exercise discretion to hear the appeal.

**{¶36}** Appellant's third assignment of error is without merit.

**{¶37}** "ASSIGNMENT OF ERROR 4: THE TRIAL COURT ERRED WHEN IT FAILED TO IMPOSE POST-RELEASE CONTROL AT APPELLANT'S SENTENCING."

11

{¶38} Appellant argues that his sentence is void because the sentencing court failed to impose mandatory post-release control at the sentencing hearing, although the court incorporated post-release control in the sentencing journal entry. Appellant also argues that the proper remedy is a resentencing hearing.

{¶39} "With R.C. 2929.191, the General Assembly has now provided a statutory remedy to correct a failure to properly impose post release control. Effective July 11, 2006, R.C. 2929.191 establishes a procedure to remedy a sentence that fails to properly impose a term of post release control. It applies to offenders who have not yet been released from prison and who fall into at least one of three categories: those who did not receive notice at the sentencing hearing that they would be subject to post release control, those who did not receive notice that the parole board could impose a prison term for a violation of post release control, or those who did not have both of these statutorily mandated notices incorporated into their sentencing entries. R.C. 2929.191(A) and (B)." *State v. Singleton*, 2009-Ohio-6434, 124 Ohio St. 3d 173, 920 N.E.2d 958, ¶ 23.

{¶40} "After July 11, 2006, when a judge fails to impose statutorily mandated post-release control," the sentence is not void, but is instead subject to the correction procedure outlined in R.C. 2929.191 when an offender has not yet been released from prison. *State v. Hall*, 11th Dist. Ashtabula No. 2016-A-0069, 2017-Ohio-4376, 93 N.E.3d 35, ¶ 11, appeal not allowed, 151 Ohio St.3d 1428, 2017-Ohio-8371, 84 N.E.3d 1065. And when an appellant does not receive statutorily compliant notification at the sentencing hearing, the remedy is to provide him with a R.C. 2929.191(C) hearing for the limited purpose of providing proper notification. *Id.* at ¶ 21, citing *State v. Singleton*, 124 Ohio St.3d 173, 2009-Ohio-6434, 920 N.E.2d 958, paragraph two of the syllabus.

12

{¶41} Here, the sentencing court failed to impose mandatory post-release control at the sentencing hearing, but the court imposed post-release control on the sentencing journal entry. R.C. 2191.191 governs that the sentencing is not void but is subject to a hearing with the limited purpose of providing the Appellant with notice of mandatory post-release control. Appellant is incorrect in asserting that the proper remedy is a re-sentencing hearing. The hearing R.C. 2191.191(C) mandates is not a re-sentencing hearing. *State v. Hall*, ¶ 11.

{¶42} We remand to the court of common pleas for a hearing to provide the Appellant with notice of mandatory post-release control.

{¶43} Accordingly, we vacate the sentence on count one of felonious assault. We affirm counts two and three of felonious assault. Appellant's second assignment of error is without merit. Appellant's third assignment of error is without merit. Appellant's fourth assignment of error has merit. We remand to the trial court to 1) impose an indefinite sentence on the appropriate count of felonious assault; and 2) provide Appellant with notice of mandatory post-release control, only.

CYNTHIA WESTCOTT RICE, J.,

THOMAS R. WRIGHT, J.,

concur.