[Cite as *State v. Shannon*, 2022-Ohio-4160.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2021-T-0049 |
| Plaintiff-Appellee, | |
| - v - | Criminal Appeal from the Court of Common Pleas |
| MARQUES L. SHANNON, | |
| Defendant-Appellant. | Trial Court No. 2021 CR 00581 |

**O P I N I O N**

Decided: November 21, 2022
Judgment:  Affirmed

*Dennis Watkins*, Trumbull County Prosecutor, and *Ryan J. Sanders*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*Joseph F. Salzgeber*, P.O. Box 799, Brunswick, OH 44212 (For Defendant-Appellant).


MATT LYNCH, J.

{¶1}    Defendant-appellant, Marques L. Shannon, appeals his convictions and sentence for Domestic Violence, Felonious Assault, and Intimidation of a Witness in the Trumbull County Court of Common Pleas.  For the following reasons, we affirm the decision of the lower court.

{¶2}    On August 5, 2021, Shannon was indicted by the Trumbull County Grand Jury for Domestic Violence, a felony of the third degree, in violation of R.C. 2919.25(A); Felonious Assault, a felony of the second degree, in violation of R.C. 2903.11(A)(1); and

Intimidation of a Witness in a Criminal Case, a felony of the third degree, in violation of R.C. 2921.04(B)(1).

{¶3} A jury trial was held on October 12-14, 2021. The following pertinent testimony and evidence were presented:

{¶4} Laken Cortese had a romantic and sexual relationship with Shannon from November 2020 until June 2021. Shannon would sometimes spend the night at her home and had been living with her since March 7, 2021. On March 22, 2021, at around 7 p.m., the two got in an argument. Shannon began using expletives and Cortese called him a "bi**h." Shannon hit her multiple times on the face and head and dumped salad dressing on her. He said, "that's what [Cortese] got for calling him a bi**h." She could not remember what happened afterward until she was inside her residence in the shower. Shannon was present with her in the bathroom. She took pictures of her injuries, sent them to friends, and "told them if they didn't hear from me the next day to send help." When a friend called her, Shannon took the phone away from Cortese.

{¶5} The next day, Cortese went with Shannon to his mother's house. She subsequently visited a friend and later received a call from her mother that her child was in the emergency room, which call was made in an attempt to get Cortese to seek treatment. Cortese received treatment at the hospital and had suffered bruising to her face, jaw pain, and a "minor brain bleed."

{¶6} Cortese testified that Shannon threatened her and her children and stated that if she thought about pressing charges, she would not make it to the preliminary hearing. Cortese received calls in the days before trial asking if she was going to court and a text message telling her not to testify.

2

{¶7} The State introduced screenshots of posts on Shannon's Facebook account. One post made after the incident stated: "Ladies if you have the nerve to call a man a bi**h, don't act all scared and s**t when you get bi**hed. Watch your mouth." Another post stated: "Women better act like women or they're getting clapped like men." In messages between Shannon and Cortese, Shannon asked what he did, Cortese described her injuries, and he responded "I'm sorry. I'm very strong. I don't kno[w] my strength. I'll NEVER touch you aggressively again."

{¶8} Kourtney Willrich, Cortese's friend, described that, on March 22, she received a call from Cortese who was crying, but the phone disconnected. She also received pictures through Snapchat which showed Cortese was crying and had a swollen face. She attempted to contact Cortese via Facetime and Shannon stated, "If your friend would have never called me a bi**h, * * * this would have never ended like this" and hung up. Shaunci Osborne called Cortese via Facetime around 8 p.m. on March 22 and Shannon answered. He said "this is what happens to your friend when she wants to call me a bi**h." He then showed Cortese in the shower with a bloody face, crying.

{¶9} Ashley Beach, another friend, testified that Cortese sent her a message around 9 p.m. on March 22 "and said that they had gotten into a fight and that she was scared. She was hurt. She didn't know what to do. * * * And then she had Snapchatted me and was asking me if I don't hear from her to please make sure that she's okay in the morning." On March 23, Beach cleaned out Cortese's car, which was covered in Italian dressing and had blood smeared on the roof. On that date, Beach observed that Shannon repeatedly sent messages to Cortese, who she described as acting frantic and shaky.

{¶10} Patrolman Bryce Lapierre of the Girard Police Department was dispatched

3

to the hospital on March 24 and encountered Cortese who was crying and scared. A video of his interview with Cortese was played, in which she described Shannon assaulting her.

{¶11} Elizabeth Sheets, a friend of Shannon, testified for the defense. She testified that she was with Shannon on March 22 from around 5 p.m. to 11 p.m. when she dropped him off at another friend's home. He did not leave the residence during the time she was with him. The prosecutor inquired about whether she had committed sexual acts with Shannon and the nature of their relationship. She maintained that they were friends. Sheets admitted to posting Facebook comments online at his request, including a comment about "running to the cops."

{¶12} The jury found Shannon guilty of the offenses as charged in the indictment. The court held a sentencing hearing on November 2, 2021. Domestic Violence and Felonious Assault were merged for sentencing. The court noted Shannon's felony record, including prior domestic violence convictions, and imposed a sentence of 8 to 12 years for Felonious Assault and one year for Intimidation of a Witness, to be run consecutively. The sentence was memorialized in a November 9, 2021 Judgment Entry.

{¶13} On appeal, Shannon raises the following assignments of error:

{¶14} "[1.] The evidence was insufficient to support the jury's verdicts of 'guilty' with respect to the charged offenses of felonious assault, domestic violence and intimidation against defendant-appellant.

{¶15} "[2.] Defendant-appellant's convictions of the charged offenses of felonious assault, domestic violence and intimidation were against the manifest weight of the evidence.

4

{¶16} "[3.] The state of Ohio committed prosecutorial misconduct in the cross-examination of the defense alibi witness, which constituted plain error and prejudicially affected the defendant-appellant's substantive rights.

{¶17} "[4.] The Reagan Tokes sentencing law is unconstitutional as applied in the instant case where the trial court imposed an indefinite prison term on defendant-appellant of a minimum of 8 years up to a maximum of 12 years, with respect to defendant-appellant's felonious assault conviction as to count two, a felony of the second degree."

{¶18} We will consider Shannon's first and second assignments of error jointly. Shannon argues that the convictions were unsupported by sufficient evidence and were against the weight of the evidence.

{¶19} Sufficiency is a test of the adequacy of the evidence to determine "whether the evidence is legally sufficient to support the * * * verdict as a matter of law." (Citation omitted.) *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt," i.e., "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶20} Whereas "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the

5

evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387. "[A] reviewing court asks whose evidence is more persuasive—the state's or the defendant's?" *Id.* An appellate court must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Citation omitted.) *Thompkins* at 387. "Since there must be sufficient evidence to take a case to the jury, it follows that 'a finding that a conviction is supported by the *weight* of the evidence necessarily must include a finding of sufficiency.'" (Citation omitted.) *State v. Arcaro*, 11th Dist. Ashtabula No. 2012-A-0028, 2013-Ohio-1842, ¶ 32.

{¶21} Shannon raises several arguments relating to the weight and sufficiency of the evidence. First, he contends that the State failed to establish all of the elements of Felonious Assault and Domestic Violence, specifically whether he was present during the alleged time of the commission of the acts, citing to the testimony of his alibi witness.

{¶22} To convict Shannon of Domestic Violence, the State was required to prove that he did "knowingly cause or attempt to cause physical harm to a family or household member." R.C. 2919.25(A). To convict him of Felonious Assault, it was required to prove that he did "knowingly * * * [c]ause serious physical harm to another." R.C. 2903.11(A)(1).

{¶23} As an initial matter, this court has held that, "where allied offenses are merged and there is sufficient evidence on the offense for which the defendant is sentenced, errors relating to sufficiency and weight of the evidence on the count that is merged are harmless and need not be considered." *State v. McCleery*, 11th Dist.

6

Trumbull No. 2021-T-0024, 2022-Ohio-263, ¶ 21, citing *State v. Mugrage*, 11th Dist. Portage No. 2020-P-0066, 2021-Ohio-4136, ¶ 133. *See also State v. Johnson*, 1st Dist. Hamilton Nos. C-190658 and C-190659, 2021-Ohio-1321, ¶ 12 (declining to address arguments relating to the finding of guilt on a Domestic Violence charge where it merged into Assault conviction at sentencing). Thus, we will address the issues raised by Shannon in relation to Felonious Assault but not Domestic Violence.

{¶24} We do not find that the verdict was against the weight of the evidence or supported by insufficient evidence due to the testimony of the alibi witness. Sheets testified that Shannon was with her at the time of the alleged assault. However, Cortese testified that during that same time, she was with Shannon and he assaulted her. Cortese's version of events was corroborated by the testimony of multiple friends who received calls or messages documenting Cortese's injuries and who spoke to Shannon on Facetime, demonstrating he was present with Cortese at that time. It is evident the jurors found Sheets' testimony lacking in credibility when compared to the other witnesses. "The choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan,* 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986). "Since the jury is in the best position to assess credibility, we generally decline to second guess its credibility determinations." *State v. Tiggett*, 11th Dist. Trumbull No. 2018-T-0036, 2019-Ohio-1715, ¶ 34.

{¶25} Shannon also argues that Cortese's acts were not consistent with a victim of assault, emphasizing that she did not call the police or ask her friends to do so and she continued to date Shannon and have a sexual relationship with him after the incident.

7

These arguments also relate to Cortese's credibility and are best left for the jurors to decide. Her actions after the assault and decision to stay with Shannon do not negate the testimony from several witnesses about the injuries she suffered and there was extensive testimony and evidence that Shannon made statements on social media and to Cortese's friends that implied or admitted the assault.

{¶26} Shannon contends that Cortese's injuries could have been caused by her falling in the shower. Again, however, there was extensive testimony supporting the fact that he was the cause of her injuries. Further, Patrolman Lapierre of the Girard Police Department testified that in his opinion and experience with assaults and domestic violence, the injuries were not caused by passing out or falling. There is also no question Cortese suffered serious physical harm, given her testimony, the photographs of her injuries, and medical records showing injuries to her head. *See State v. Bowden*, 11th Dist. Ashtabula No. 2013-A-0040, 2014-Ohio-158, ¶ 33 ("it is well-established that this element may be reasonably inferred '[w]here injuries to the victim are serious enough to cause him or her to seek medical treatment'") (citation omitted.)

{¶27} Shannon next argues that the State failed to prove that the victim was a "family or household member" as is necessary for Domestic Violence. As stated above, however, since the offense of Domestic Violence merged into Felonious Assault, it is not necessary to address the sufficiency or weight of the evidence as to this charge.

{¶28} Finally, Shannon asserts that the conviction for Intimidation of a Witness was against the weight and sufficiency of the evidence because Cortese provided testimony that she was not threatened by or afraid of him and had maintained their relationship after the alleged assault occurred.

8

**{¶29}** To convict Shannon of Intimidation of a Witness, the State was required to prove that he "knowingly and by force or by unlawful threat of harm to any person or property or by unlawful threat to commit any offense or calumny against any person, * * * attempt[ed] to influence, intimidate, or hinder * * * [t]he victim of a crime or delinquent act in the filing or prosecution of criminal charges." R.C. 2921.04(B)(1).

**{¶30}** Here, Cortese testified that Shannon threatened her and stated that she would not make it to the preliminary hearing if she reported the assault. This testimony meets the requirements of using a threat to attempt to influence, intimidate or hinder the victim from prosecuting charges. Regardless of whether Cortese was in fear from these threats and continued to remain in contact with Shannon, the elements of this offense do not require that the State prove that the victim was in fear. As has been observed, under R.C. 2921.04(B), "[t]he defendant need only try to create fear about or try to influence or hinder the filing or prosecution of criminal charges" and "[t]here is no requirement that the victim actually feel intimidated." (Citation omitted.) *State v. Serrano*, 69 N.E.3d 87, 2016-Ohio-4691, ¶ 44 (8th Dist.)*.*

**{¶31}** At the preliminary hearing, Cortese testified that she was not threatened by Shannon and was not concerned for her safety, before subsequently proceeding to identify Shannon as assaulting her. While Cortese may have been inconsistent in her testimony regarding the threats, this again is an issue of credibility for the jury to determine. It was within their province to decide whether Cortese was telling the truth at trial and may have had reasons, including the threats, to give inconsistent testimony at the preliminary hearing. As Cortese testified at trial, her conduct relating to Shannon after the assault and decision to stay with him arose in part due to the threat he made and her

9

fear that he may harm her family.

**{¶32}** The first and second assignments of error are without merit.

**{¶33}** In his third assignment of error, Shannon argues that prosecutorial misconduct was committed during the State's cross-examination of Sheets "by repeatedly and falsely claiming to have recorded telephone conversations" between Shannon and Sheets in which she allegedly talked about committing certain sexual acts with him.

**{¶34}** To address allegations of prosecutorial misconduct, we "must determine (1) whether the prosecutor's conduct was improper and (2) if so, whether it prejudicially affected [the defendant's] substantial rights." *State v. LaMar,* 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 121. "[P]rosecutorial misconduct alone does not require a new trial." *State v. Hamad*, 11th Dist. Trumbull No. 2017-T-0108, 2019-Ohio-2664, ¶ 123. "The conduct of a prosecuting attorney during trial cannot be made a ground of error unless the conduct deprives defendant of a fair trial." *State v. Apanovitch*, 33 Ohio St.3d 19, 24, 514 N.E.2d 394 (1987), citing *State v. Maurer*, 15 Ohio St.3d 239, 266, 473 N.E.2d 768 (1984). "[I]t must be clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would have found defendant guilty." *Maurer* at 267.

**{¶35}** Here, Shannon did not object to the statements in question and thus has "forfeited all argument relative to these statements except that of plain error." *State v. Furmage*, 11th Dist. Ashtabula No. 2020-A-0057, 2022-Ohio-1465, ¶ 80. "Plain error exists when it can be said that but for the error, the outcome of the trial would clearly have been otherwise." *State v. Issa*, 93 Ohio St.3d 49, 56, 752 N.E.2d 904 (2001). Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and

10

only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

**{¶36}** During Sheets' cross-examination, the prosecutor asked whether she planned on "being with" Shannon once he is released from jail, to which she responded negatively. The prosecutor stated: "I can show you the messages where you talk about [performing sexual acts involving Shannon] and those types of things, if you want." Sheets responded that she did not send that type of message. The prosecutor asked: "You agree that there are messages between you and him talking sexually, though; correct?" including from the jail, to which Sheets responded "Yeah." No records of phone calls or text messages referenced were introduced.

**{¶37}** Here, it is not clear if the prosecution was in possession of text messages or phone calls of the alleged interactions between Sheets and Shannon. However, there is nothing in the record to indicate that the questions were asked to convey false information or mislead the jury. "The prosecution * * * must avoid insinuations and assertions which are calculated to mislead the jury." *State v. Grable*, 11th Dist. Ashtabula No. 2019-A-0042, 2019-Ohio-4516, ¶ 16. In fact, Sheets ultimately admitted that she did engage in sexual text messages with Shannon, although the content of such messages is unknown.

**{¶38}** Nonetheless, even presuming the prosecutor's comments were improper, they had no prejudicial impact on Shannon's rights or the outcome of the trial. As outlined above, there was overwhelming evidence supporting Shannon's convictions, including the testimony of the victim and multiple witnesses regarding the events that occurred that

11

Case No. 2021-T-0049

night, which directly contradicted Sheets' alibi testimony, and Shannon's own Facebook comments.

**{¶39}** The third assignment of error is without merit.

**{¶40}** In his fourth assignment of error, Shannon argues that "the Reagan Tokes Law, as applied to the sentence in Mr. Shannon's case, violates [his] Sixth Amendment right to trial by jury, the doctrine of separation of powers, and Fourteenth Amendment due process based on (1) lack of notice due to vagueness, (2) inadequate parameters on executive branch discretion, and (3) inadequate guarantees for a fair hearing."

**{¶41}** In support of the contention that sentences under Reagan Tokes are invalid, Shannon cites extensively to *State v. Delvallie*, 2021-Ohio-1809, 173 N.E.3d 544 (8th Dist.). We emphasize that this opinion was vacated by the Eighth District sitting en banc and the court upheld the constitutionality of the law in *State v. Delvallie*, 2022-Ohio-470, 185 N.E.3d 536 (8th Dist.).

**{¶42}** We reject Shannon's arguments that the Reagan Tokes Law is unconstitutional. Initially, "we are to presume that [a] state statute is constitutional, and the burden is on the person challenging the statute to prove otherwise beyond a reasonable doubt." *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, 861 N.E.2d 512, ¶ 17. Further, no objection was raised to the sentence in the lower court. "[A]n appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." (Citation omitted.) *Awan*, 22 Ohio St.3d at 122, 489 N.E.2d 277. While an appellate court may hear a constitutional challenge that has not been raised below, such an issue is evaluated only

12

for plain error. *State v. Freetage*, 11th Dist. Portage No. 2020-P-0083, 2021-Ohio-4050, ¶ 34. "When the court hears an appeal for plain error, it must presume the constitutionality of the statute at issue and will not invalidate it unless the challenger establishes that it is unconstitutional beyond a reasonable doubt." *Id.*

{¶43} Shannon argues that Reagan Tokes violates the right to a trial by jury, noting that *Delvallie* found that it improperly removed the fact-finding duty from the jury and put it in the hands of the ODRC.

{¶44} In the en banc *Delvallie* opinion, 2022-Ohio-470, the Eighth District found that R.C. 2967.271(C) and (D) do not violate the right to a jury trial. It rejected its prior determination and found that, while *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), prevents the trial court from imposing a sentence in excess of the statutory maximum without the factual circumstances justifying the enhanced sentence first being found by a jury beyond a reasonable doubt, R.C. 2967.271 statutorily requires a court "to impose the minimum and maximum terms upon the offender being found guilty of the qualifying felony offense – similar to an offender being sentenced to life with the possibility of parole under the indefinite life sentencing structure." *Id.* at ¶ 40. Reagan Tokes does not authorize "a sentencing court, or the ODRC for that matter, to impose a sentence beyond the maximum set forth in the sentencing statutes or to elevate the minimum term beyond the ranges set forth in R.C. 2929.14(A)(1)(a) and (A)(2)(a)." *Id.* at ¶ 41. Further, it emphasized that under *Oregon v. Ice*, 555 U.S. 160, 129 S.Ct. 711, 172 L.Ed.2d 517 (2009), a state court's imposition of consecutive sentences did not violate the right to a jury trial because juries historically "played no role in" the decision to impose consecutive or concurrent sentences and that "specification of the regime for

13

Case No. 2021-T-0049

administering multiple sentences has long been considered the prerogative of state legislatures." *Delvallie* at ¶ 42, citing *Ice* at 168. Under Reagan Tokes, the court cannot impose a term greater than the maximum as prohibited under *Apprendi* nor does it impose a sentence longer than the minimum term prescribed by statute based on findings of facts in addition to those considered by the jury.

{**¶45**} Next, Shannon argues that Reagan Tokes violates the separation of powers. This argument has been consistently rejected by courts throughout this state. *State v. Barnes*, 2d Dist. Montgomery No. 28613, 2020-Ohio-4150, ¶ 36; *State v. Hacker*, 2020-Ohio-5048, 161 N.E.3d 112, ¶ 22 (3d Dist.); *State v. Bontrager*, 2022-Ohio-1367, 188 N.E.3d 607, ¶ 44 (4th Dist.); *State v. Ratliff*, 2022-Ohio-1372, 190 N.E.3d 684, ¶ 56 (5th Dist.); *State v. Maddox*, 2022-Ohio-1350, 188 N.E.3d 682, ¶ 7 (6th Dist.); *Delvallie*, 2022-Ohio-470, at ¶ 38.

{**¶46**} Shannon cites the application of *State ex rel. Bray v. Russell*, 89 Ohio St.3d 132, 729 N.E.2d 359 (2000), in support of the argument that the Reagan Tokes Law violates the separation of powers because it vests judicial power in the executive branch. *Bray* addressed the constitutionality of R.C. 2967.11, which allowed the parole board to punish a rule violation committed by the prisoner by extending the stated prison term. In *Bray*, the Ohio Supreme Court held that R.C. 2967.11 was unconstitutional because the parole board "act[ed] as judge, prosecutor, and jury" and its enactment intruded "well beyond the defined role of the executive branch as set forth in our Constitution." *Id.* at 135.

{**¶47**} *Bray* is inapplicable to the Reagan Tokes Act. R.C. 2967.11 authorized the parole board to impose an additional prison term beyond the one the trial court imposed.

14

Case No. 2021-T-0049

Under Reagan Tokes, the executive branch cannot impose additional time beyond the maximum sentence imposed by the trial court at the time of sentencing. This situation is more similar to that in *Woods v. Telb*, 89 Ohio St.3d 504, 733 N.E.2d 1103 (2000), where the court found Ohio's postrelease control statute, R.C. 2967.27, to be constitutional since the postrelease control terms are made part of the sentence imposed by the court and the parole board's discretionary power to impose postrelease control sanctions did not impinge on the judiciary's mandate to impose sentence. *Id.* at 512. In Reagan Tokes sentences, the court imposes both presumptive minimum and possible maximum prison terms in its sentence. Thereafter, the ODRC determines whether the offender's conduct warrants more than the minimum imposed but cannot exceed the judiciary's maximum imposed sentence. This procedure has been characterized as "not meaningfully distinct from Ohio's current parole system, in which offenders may be kept in prison following service of the minimum term for parole eligibility" and as "similar, if not identical, to the executive branch's authority to release offenders from sentences under Ohio's parole system for indefinite life sentences." *Delvallie*, 2022-Ohio-470, at ¶ 24-25. Therefore, *Bray* does "not compel the conclusion that the Reagan Tokes Law violates the separation of powers doctrine." *Barnes* at ¶ 36.

{¶48} Shannon also argues that Reagan Tokes violates his due process rights, contending that it is void for vagueness because factors other than those stated in the statute can be considered to extend his sentence. Again, he cites to the vacated opinion in *Delvallie*, in which the appellant argued that the requirements for a rule violation in prison were too vague to allow for extending the minimum sentence. We observe that although Shannon states in his brief that the Reagan Tokes Law "as applied to the

15

Case No. 2021-T-0049

sentence in Mr. Shannon's case, violates * * * due process," the substantive arguments raised relate to the validity of the statute as a whole rather than in relation to his particular conduct. *See Kruppa v. Warren*, 11th Dist. Trumbull No. 2009-T-0017, 2009-Ohio-4927, ¶ 12 ("[a]n as applied challenge asserts that a statute is unconstitutional as applied to the challenger's particular conduct," while a facial challenge asserts the statute is unconstitutional in "all of its applications"). We thus address his arguments as a facial challenge to the law.

{¶49} "'[A] law will survive a void-for-vagueness challenge if it is written so that a person of common intelligence is able to ascertain what conduct is prohibited, and if the law provides sufficient standards to prevent arbitrary and discriminatory enforcement.'" (Citations omitted.) *Klein v. Leis,* 99 Ohio St.3d 537, 2003-Ohio-4779, 795 N.E.2d 633, ¶ 16. A tripartite analysis must be conducted to address a void for vagueness challenge: the statute must provide "adequate notice and fair warning to persons of ordinary intelligence so that they can conform their conduct to the dictates of the statute"; it cannot permit arbitrary and discriminatory enforcement; and it cannot unreasonably hinder fundamental constitutional freedoms. *State v. Collier*, 62 Ohio St.3d 267, 270, 581 N.E.2d 552 (1991). *See also Perez v. Cleveland*, 78 Ohio St.3d 376, 378, 678 N.E.2d 537 (1997) ("when a statute is challenged under the due process doctrine of vagueness, a court must determine whether the enactment (1) provides sufficient notice of its proscriptions and (2) contains reasonably clear guidelines to prevent official arbitrariness or discrimination in its enforcement").

{¶50} In *State v. Williams*, 88 Ohio St.3d 513, 728 N.E.2d 342 (2000), the Ohio Supreme Court found a sex offender classification statute was not vague where it did not

Case No. 2021-T-0049

prohibit specific conduct but established remedial registration and notification, since such remedial measures "require less specificity to satisfy a void-for-vagueness challenge than do criminal statutes." *Id.* at 533. Applying this analysis, the Fifth District found that postrelease control enactments were also not unconstitutionally vague, emphasizing that they did not prohibit specific conduct. *State v. Hopkins*, 5th Dist. Stark Nos. 2000CA00053 and 2000CA000054, 2000 WL 1751286, *4 (Nov. 27, 2000).

{¶51} The foregoing is applicable to the Reagan Tokes Law. R.C. 2967.271(B) establishes a rebuttable presumption that the offender shall be released upon the expiration of the minimum prison term or early release date, whichever is earlier. Division (C) provides a detailed description of means by which that presumption may be overcome, including commission of institutional rule infractions, the offender's security level classification, and when the behavior while incarcerated demonstrates a continued threat to society. As in *Williams*, R.C. 2967.271 does not prohibit any specific conduct. Therefore, the statute requires less specificity than a typical criminal enactment.

{¶52} As the en banc panel in *Delvallie* explained, the Reagan Tokes Law does not create a new prison rule infraction system; Ohio Adm.Code 5120-9-08 sets forth "an inmate's rights and the procedures the Rules Infraction Board are to follow in imposing any and all institutional infractions upon the inmates. *See, e.g., Oko v. Lake Erie Corr. Inst.*, 11th Dist. Ashtabula No. 2010-A-0002, 2010-Ohio-2821, 2010 WL 2499702, ¶ 3 (overruling a constitutional challenge to the decision by the Rules Infraction Board)." *Delvallie*, 2022-Ohio-470, at ¶ 86. An as applied challenge of an infraction received under that Board would have to be raised through a separate writ upon imposition of the infraction. Therefore, any challenges to the vagueness of the enforcement of the Rules

Case No. 2021-T-0049

Infraction Board must be pursued through a writ of mandamus. *Id.* at ¶ 87. Based on the foregoing, we conclude that the provisions in R.C. 2967.271 are not vague.

**{¶53}** Finally, we address the proposition that due process is violated due to a lack of procedural safeguards in relation to rebuttal of the presumption of release. As noted above, the rights in the present matter have been compared to those involving parole. The Ohio Supreme Court has held that a right to parole consideration does not create a "liberty interest sufficient to establish a right to procedural due process." *State ex rel. Blake v. Shoemaker*, 4 Ohio St.3d 42, 446 N.E.2d 169 (1983). "However, if state law entitles an inmate to release on parole, that entitlement is a liberty interest that is not to be taken away without due process." *Ratliff*, 2022-Ohio-1372, at ¶ 20.

**{¶54}** While no Ohio appellate district has held that R.C. 2967.271(C) violates due process, some districts have reached different conclusions regarding whether requiring a prisoner to remain in prison beyond the rebuttable presumption of release is analogous to parole eligibility or parole revocation proceedings involving a termination of liberty which would require an "informal hearing" to verify facts supporting revocation. *Morrissey v. Brewer*, 408 U.S. 471, 484, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

**{¶55}** The Twelfth and Sixth Districts have concluded that hearings conducted under the Reagan Tokes Law are analogous to parole revocation proceedings. In *State v. Stenson*, 190 N.E.3d 1240, 2022-Ohio-2072 (6th Dist.), the court found that "the Reagan Tokes Law creates a liberty interest more akin to probation revocation decisions," emphasizing that a parole release/eligibility is more discretionary and subjective than parole revocation. *Id.* at ¶ 31. *See also State v. Guyton*, 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837, ¶ 17 ("[t]he hearings conducted by the ODRC under R.C.

18

2967.271(C) are analogous to parole revocation proceedings, probation revocation proceedings, and postrelease control violation hearings").

{¶56} In contrast, the Second District has concluded that "requiring a defendant to remain in prison beyond the presumptive minimum term is akin to the decision to grant or deny parole" since "if [the offender] commits rule infractions or crimes while in prison, he may be required to serve the entire sentence already imposed by the trial court." *State v. Leet*, 2d Dist. Montgomery No. 28670, 2020-Ohio-4592, ¶ 17.

{¶57} We find it premature to reach a conclusion as to whether parole revocation or parole eligibility procedures most closely resemble the present matter. Shannon does not raise a challenge to the statute as applied; since he has not yet been subject to a sentence beyond the minimum term, his challenge necessarily is facial in nature. *See Stenson* at ¶ 31 (the "ODRC has not sought to extend [appellant's] term beyond the presumptive minimum sentence * * * [and his] challenge to the Reagan Tokes Law is necessarily a facial challenge"). "A facial challenge to a statute is the most difficult to bring successfully because the challenger must establish that there exists no set of circumstances under which the statute would be valid." *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, ¶ 37. "The fact that a statute might operate unconstitutionally under some plausible set of circumstances is insufficient to render it wholly invalid." *Id.* "If a statute is unconstitutional on its face, the statute may not be enforced under any circumstances." *Wymslo v. Bartec, Inc.*, 132 Ohio St.3d 167, 2012-Ohio-2187, 970 N.E.2d 898, ¶ 21.

{¶58} It has been held that "the Reagan Tokes Law may not be found to be unconstitutional, on its face, as violating due process merely because the specific

procedures for invoking an additional period of incarceration are not set forth in the Law itself." *State v. Williams,* 6th Dist. Lucas No. L-21-1152, 2022-Ohio-2812, ¶ 22. "[T]he legislature is not required to codify all rules and procedures under the statutory provision but instead can defer to the executive agency's establishment of its own rules or procedures to safeguard constitutional concerns, which must be challenged through the appropriate mechanisms." *Delvallie*, 2022-Ohio-470, at ¶ 59. We do not find that, as a facial challenge, there are no circumstances under which the statute can be enforced. *Stenson* at ¶ 33 ("given that this is a facial challenge to the Law, it cannot be said at this juncture that the Law 'cannot be applied constitutionally in any circumstances'").

**{¶59}** We find that Shannon's arguments relating to R.C. 2967.271(C) and the procedural safeguards of the hearing to rebut his presumptive release constitute an as applied challenge which is not yet ripe for review, because those aspects of the statute have not been applied to him.

**{¶60}** The fourth assignment of error is without merit.

**{¶61}** For the foregoing reasons, Shannon's convictions and sentence in the Trumbull County Court of Common Pleas are affirmed. Costs to be taxed against appellant.


THOMAS R. WRIGHT, P.J.,

MARY JANE TRAPP, J.,

concur.

Case No. 2021-T-0049